Good morning, Your Honors, and may it please the Court. Erin Murphy on behalf of the Plaintiff Appellants. This case concerns the City of Sunnyvale's confiscatory ban on magazines that are possessed by millions of law-abiding Americans for the lawful purpose of self-defense. The District Court concluded that these magazines are protected by the Second Amendment, yet nonetheless concluded that they may be prohibited entirely. Those two conclusions are fundamentally incompatible. As Heller makes clear, once something is within the scope of the Second Amendment, then flatly prohibiting it is simply not an option. The City may regulate these magazines. It may certainly restrict them to law-abiding individuals. But what the City may not do is take the extreme measure it has taken here of completely prohibiting them and, indeed, even compensating them from the homes of individuals who have lawfully obtained them. And I think it's quite telling that this ordinance includes these confiscatory measures, because what that reveals is that even the City recognizes that the items it's seeking to prohibit are not something that is rarely possessed and possessed only by those who would conceal the possession from law authorities. The City is seeking to prohibit possession of something that is possessed by law-abiding people for law-abiding purposes. And, indeed, every court that has looked at this question has really agreed about that point, that there's really no dispute that these magazines are commonly possessed by law-abiding individuals for law-abiding purposes. The problem with the District Court's analysis here is that should have been the end of the analysis, not the beginning, because once something is protected by the Constitution, then flatly prohibiting it is something the government may not do. Sotomayor, I have a question for you, counsel. Does it matter at all that we are reviewing the preliminary injunction ruling as opposed to a decision on the merits? I don't think it does here, because, really, the basic facts aren't in dispute, and the case ultimately turns primarily just on the legal question, the first question being whether this conduct is within the scope of the Second Amendment. If you thought that, why didn't you stipulate to merge the preliminary and final injunction in one hearing? You know, I think we thought that the record as it was worked for purposes of proceeding on a preliminary injunction, and that it wasn't going to make a large determinant of that much of a difference which way we were proceeding in the first instance before this Court. But certainly because, as a legal matter, we think what the error here was, was a legal error in the Court misunderstanding the legal principles and whether we were likely to succeed on the merits. We've also stipulated to stay the proceedings below pending the court's appeal. Pending this appeal, that's correct. And that's, again, because we think ultimately this is a case in which pretty much all of the factors come back to the question of whether the conduct we're talking about is within the scope of the amendment, and if so, whether the restriction is a permissible restriction as a legal matter in light of the fact that the conduct falls within the scope of the amendment. Kennedy, if you were to deny this interlocutory relief and the case went back to district court, what would you put up in terms of proof on the merits? Well, I mean, the district court already agreed. It's different. That's not before us. Sure. I mean, the district court here already agreed with us on the first kind of the first set of questions that turn on facts here, those being whether this conduct falls within the scope of the amendment. So I suppose if the court were to reject kind of the notion that a categorical approach would apply here and that really the second piece of the analysis doesn't matter all that much, we'd go back and we'd create even more of a record than we have on the questions both of the extent to which the city's restriction actually furthers the interest that it has set forth and the extent to which it does so in a meaningfully tailored manner. And it's that last piece that I think is really particularly problematic in the district court's analysis here, because even if you aren't with me on the notion that this should all be, that Heller and really Peruta, too, demand a categorical approach here, the district court just basically never engaged in a tailoring analysis below. The court said the government has a strong interest here and this is sufficiently related to that interest, and then it just stopped the analysis there. But it's quite clear under this Court's law and under many Supreme Court decisions implying either strict or intermediate scrutiny that that's only two pieces of the analysis, and really the critical one is the tailoring analysis of whether the law is sufficiently tailored to achieve the interest that the city set forth. Kennedy, I think the appropriate way to try and have a tailored response to the interest asserted here, and I guess it would help probably to start by saying what I view as the nature of the interest the city is asserting, which is a very specific interest. It's an interest in preventing these magazines from being used, not even just in crimes in general, but in a very specific category of crimes. And I think a much more tailored approach to trying to address that interest is a much more tailored approach is to target the individuals who would misuse them, instead of the blanket approach of taking the magazines out of the hands, even if individuals. I think, I mean, in terms of the first instance of just generally keeping firearms and magazines out of the hands of criminals, there are many laws that do so, laws such as felon in possession restrictions, laws that require people to safely store their firearms so that they can't be stolen by individuals who would misuse them. Now, I concede that there's a little bit of a difficulty when you're talking about mass shootings, which this law is particularly aimed at, because generally, you know, that's less of a crime that has to do with deterrence, and it's a crime that's generally committed only once. Sotomayor, many of the people who have been perpetrators have not had criminal records. Precisely. But some of the jurisdictions that have tried to address this have done so by strengthening restrictions on access by people with mental illness, on things that are designed to identify the type of person in whose hands we don't want these magazines, instead of saying, you know what, we're just going to take them away from everybody, even though the vast majority of individuals, whether in Sunnyvale or elsewhere, certainly aren't trying to use these magazines to perpetrate crime, let alone to perpetrate mass murders. If the Sunnyvale ordinance restricted capacity of 50 or more, would that be a problem? I think that would be a much harder case for us, and that's because the evidence generally supports the notion that 50 is not a commonly possessed number. So instead of going down, I'll give you the numbers that I do think the evidence supports, which is generally for pistols, the common, on the market, it's common to have between 10 and 20, a capacity of 10 and 20. For rifles, it tends to be 20 to 30. I think anything beyond that, you know, I'm not suggesting someone couldn't make a record, that they, in fact, are more commonly possessed than people believe. But, you know, I think when you're talking about 12, 15, 17, these aren't abnormal things for someone to possess. These are standard issue magazines on pistols that are there, on more than a third of the pistols that are on the market, and many of the most popular ones that are on the market. So, and that's, again, why I think a lot of courts have, you know, there aren't a whole lot of these laws, because they're really of relatively recent vintage. But to your argument is not about the standard of review that the Department of Justice and the district court applied, but they should have treated this as confiscatory. Well, I think we have two ways of looking at it. One is, yes, in the first instance, I think that when you're looking at something that is a flat prohibition, there's no need to go any further. The first step of Chauvin answers the question. Once something's within the scope of the Constitution, whether it's the Second Amendment or any other amendment, you can't flatly prohibit it. And that's what this law does. Now what's wrong with Teller II? I think the problem with Teller II is in its application of the first step of the analysis. So in Teller II, it's worth noting, the court begins by acknowledging, it doesn't dispute, that millions of these magazines are possessed by law-abiding individuals for lawful purposes. What it then goes on to say is, you know, we're just kind of not sure they really need them. And so basically, the court says, we get to second judge whether people have made the right determination in possessing these magazines. And I think Teller itself is a case that takes that mode of analysis off the table. And in that respect, I would particularly direct this Court to the language in Teller dealing with why it's not good enough that long arms are still long guns are still available, and why that doesn't allow the district to ban handguns. And what the Court does there is, you know, it offers a few reasons why someone might prefer a handgun versus a long gun. Then hell, there's an outright ban on private ownership of weapons, right? No. Teller I is specific to handguns. And the Court specifically rejects the argument there that the district court, that the district of Plumya made, that that didn't matter because you weren't prohibited from possessing all types of arms protected by the Second Amendment. And in doing so, what the Court says is, you know, there are plenty of reasons someone might prefer a handgun instead of a long gun. Ultimately, it doesn't really matter whether they're right or wrong in thinking that one is more effective than the other. Whatever the reason, and those are the Court's actual words, whatever the reason, Americans prefer handguns for self-defense, and therefore they may not be prohibited. And I think the same analysis ought to apply here. Whatever the reason, Americans prefer magazines with capacities of more than ten rounds. That is enough to bring them within the scope of the Second Amendment, and therefore prohibits the city from categorically banning them to all of its residents. Do you believe that this distinction that Judge White made between what is on the periphery of the Second Amendment and what is at the core of the Second Amendment matters? At one point he said the Sunnyvale law burdens conduct near the core of the Second Amendment right, and then at another point in the opinion he said the right to possess magazines having a capacity to accept more than ten rounds lies on the periphery of the Second Amendment. In a case involving a flat prohibition like this, I don't think it makes any difference at all. And if I could give you a First Amendment analogy, in the First Amendment context, commercial speech is subject to intermediate scrutiny on the theory that it's not at the core of the First Amendment. But I don't think courts would buy for one moment the notion that that means you can completely destroy the First Amendment right. That's because once something is within the scope of the right, then the question becomes how much have you burdened the conduct that's protected, not how much have you burdened the right in the abstract. And I think that same analysis that applies in the First Amendment context and prohibits the government from enacting categorical prohibitions on things that fall within the scope of the First Amendment ought to prohibit governments from enacting categorical bans on things that fall within the scope of the Second Amendment, whether or not they're at the core or the periphery. Ginsburg. So is your argument that Second Amendment jurisprudence should import wholesale the analysis of First Amendment jurisprudence? No, certainly not. There are aspects in which the two rights are just very different, and aspects in which it's sometimes hard to translate something from the First Amendment to the Second Amendment. I think one of the areas in which this is inherently complicated is trying to import wholesale the time, place, and manner restriction doctrine from the First Amendment to the Second Amendment, because certainly you could argue that a handgun restriction like the one in Heller is, in a sense, a manner restriction. It's the type of hand, it's the type of arm that you possess. But the Supreme Court didn't think that that was an appropriate way to analyze the question. It instead thought what you needed to do was look at whether what was being prohibited is something that you have a right to possess. So I think there's ways in which the two doctrines aren't completely compatible, but there are ways in which they are completely compatible. And one of those is that, as with any other constitutional rights, once something is within the scope of it, you just can't tell all law-abiding citizens that they can't exercise the right that the Constitution protects. So you rely for that premise on Heller? Absolutely. I think this is a case that really very naturally follows from Heller. I think it also follows naturally from this Court's decision in Peruta, which applied a very similar analysis to Heller. What Peruta essentially did is said, yes, we have a two-step analysis, and here, under the first step, we've concluded that the conduct at issue, carrying a firearm outside the home, is within the scope of the Second Amendment. That being the case, because the restriction there was essentially a categorical prohibition on exercising that constitutional right, the restriction was unconstitutional right then and there, and there wasn't any need to go on to the second step of the analysis. I think that's the same way the Court should look at the question here. You can do so either by saying it's because a categorical approach applies, or by looking at in terms of strict, intermediate, whatever the standard of scrutiny, any standard of scrutiny where the government bears the burden of proving not only that this meaningfully furthers its interest, but also that it does so in a sufficiently tailored manner, a categorical restriction is going to fail. And that's because categorical restrictions, by their nature, are the broadest possible means of trying to address a government interest. That might be okay in a context where you're not dealing with a constitutional right, but once you're talking about something that the Constitution protects, a categorical prohibition is exactly the reason that the constitutional protection is there. It's what is the one thing that is supposed to be quite clear that the government can't do. Ginsburg, could you point me to the case that you're relying upon for the argument that under intermediate scrutiny, the same tailoring requirement exists as it does for strict scrutiny? What case says that? Well, I wouldn't necessarily say it's precisely the same, but a case I would point you to is last term's Supreme Court decision, McCutcheon v. FEC, which struck down a law under intermediate scrutiny, and the test that the Court used there was that even under intermediate scrutiny, a law has to be closely drawn to avoid unnecessary abridgment of constitutional rights. So is that what you mean when you say tailoring under the under intermediate scrutiny? Exactly. It's sufficient tailoring. And under the Do you think that's the same as the tailoring requirement under strict scrutiny? I think under strict scrutiny, it's even more demanding than under intermediate scrutiny. You know, how much more demanding is hard, by its nature, it's hard to draw precisely what that line is. The things that I think are important to consider when engaging in the analysis are, under both standards, it's the government's burden to prove that something is sufficiently tailored. And as this Court made clear in Peruta when it talked about why it believed the courts that had gone the other way on the question got it wrong, that is not a question on which the government gets deference. That is a question where the government needs to demonstrate that its restriction is closely drawn to actually achieve the interest that the government is asserting. In your view, could the government's burden be met by showing that the law was reasonable or the ordinance was reasonably related to the public interest issues that existed for the passage of the ordinance? I don't think that's enough. That's because there's three pieces to the analysis. The first step under either form of scrutiny is how strong is the government's interest. The second is, does this actually further the government's interest? And the third is, does it do so in a sufficiently tailored means? And again, I think McCutcheon is a case that's really illustrative on this, because there the Court actually held that the restriction failed for two reasons, both because it didn't actually further the interest at all. And then the Court went on to say even if it did further the interest, it didn't do so in a sufficiently tailored manner. And that just to me makes absolutely crystal clear to the extent there was any room for debate, that there are two things the government must show when it wants to restrict constitutional conduct. We think the government hasn't shown either here, but it certainly hasn't satisfied the tailoring piece. You have a Second Amendment case that breaks down the analysis in the way that you've just articulated it? You know, it's hard for me to think of a case that precisely deals with this. I mean, I don't think, I think that Jackson, you know, assumed that the type of intermediate scrutiny that applies in this context isn't any different than the type of intermediate scrutiny that applies anywhere else. Now, I think Jackson is a very different case than this one for two reasons. One, because Jackson didn't involve a complete prohibition. It involved a restriction on sale or on manufacture, but as the Court said many times in its opinion there, individuals were still permitted to obtain hollow point ammunition elsewhere and bring it within the city to use it for self-defense purposes. And then I also think Jackson is different because at least there the city had an argument that the ammunition was dangerous, more dangerous than other ammunition in the hands of anybody. That's not the city's argument here. Here the city is only arguing, and it's quite clear about this in its brief, its only argument is we don't want these in the hands of criminals. It is not an argument that these are somehow inherently more dangerous in the hands of ordinary individuals. If I may reserve the remainder of my time. Ginsburg-Cassidy, you may. Thank you. Good morning, Your Honors. May it please the Court, Robert Thompson for the appellees, City of Sunnyvale et al. I want to first put this ordinance in context. It is an incremental regulation of the size of ammunition in a canister. It does nothing to dispossess people of arms. It does nothing categorically to prevent anyone from using a firearm. In particular, the law is tailored this way. I said incremental regulation because large capacity magazines have been regulated first at the federal level and more recently at the state level for more than 20 years. At the state level since 2000, large capacity magazines, and just so we're all clear, that's magazines capable of holding more than 10 rounds. They've been illegal in California to make, sell, transfer, or import into California. If I had for an AR-15, if I had a magazine that held five rounds and I taped it to another magazine which had five rounds, would I be in violation of this ordinance? No, Your Honor, because that would still be 10 rounds. But if you were to jerry-rig a magazine capable of holding more than one. Scalia, Section 6. Yeah. If you were to jerry-rig. It violates the ordinance? I'd have to parse the language, but I believe so, Your Honor. But you would certainly be well within your rights to have as many 10-round magazines as you choose to in your home for self-defense purposes. You could use them and reload and use them as you'd like. There is no evidence, not a shred of evidence, in this record that large-capacity magazines are necessary for self-defense. I could take those 10-round magazines together? I think you can take them together. Whether they would fall under the prohibition, I don't know. The ordinance speaks in the singular, doesn't it? Yes, it does. It doesn't say or any combination of magazines. I don't believe it does, Your Honor. It says the singular. But the ordinance wording is important because, as I've said, these magazines have been regulated for the last 14 years. The result has been manufacturers of magazines have produced California-compliant magazines. They're abundantly available in California. The record shows that anyone can get a California-compliant 10-round magazine easily. But the ordinance goes one step further. Hypothetically, Judge Hawkins, just in case there is a weapon out there that can only operate with a large-capacity magazine, larger than 10 rounds, and a citizen in Sunnyvale owns one of those and owned it before 2000, it has been exempt. Exempt, right? It's exempt. The result is this. Literally, any firearm that anyone in Sunnyvale or anyone passing through has before the ordinance can still be used after the ordinance for self-defense. The only difference may be you may have to use a California-compliant magazine if, in fact, that particular firearm can take it. And the evidence is that the vast majority, if not all, firearms work just as well with a California-compliant magazine. The point, Your Honors, is this is not a categorical ban on firearms. This is not an interference or confiscation of weapons. We've heard a lot of language about constitutional bans. This simply is a very modest, incremental regulation that the city's citizens of California, by a two-thirds vote, approved to protect themselves. Now, a couple of other things. Do you agree with opposing counsel's analytical format that there had to be a finding by the court that this ordinance was narrowly tailored, or was tailored, she didn't say narrowly, was tailored to the purposes for which it was passed? I believe the correct standard in both the Ninth Circuit's case in Chauvin and Jackson calls for a reasonable fit between the purpose or the objective of the ordinance and the important governmental purpose. Do you agree with her representation that the district court skipped that step? No, I don't, Your Honor. I think the district court applied strict scrutiny. The one place where I will quarrel with the district court, as Judge Lynn mentioned, was the district court found that the possession ban here of large-capacity magazines was at the core, or near the core, I think the language of the Second Amendment. Later on, he said something different. I think most instructive for this case is the Jackson case from the Ninth Circuit. There, the city of San Francisco passed a sales prohibition on hollow-point bullets. Why? Because hollow-point bullets are more lethal. They kill more often. Why are large-capacity magazines banned in Sunnyvale? Because they're more lethal. They allow the shooter to fire off more rounds, to kill more people, to inflict more injuries. This Court in Jackson said, well, looking at the hollow-point ammunition ban, that's not near the core. That only indirectly, that only indirectly interferes with any Second Amendment right. Here, too, the size of your large-capacity magazine, whether it's California compliant or something larger, at best only indirectly interferes. And what is the burden? You look at, the burden is very slight. What's the evidence that a magazine with a capacity of 11 bullets kills more, injures more than a magazine with 10 bullets? Because it's just a question of reloading. It's different from hollow-point bullets, which are innately more dangerous. We're calling these high-capacity, and I recognize that's the term that's been used, and I'll continue to use it. But what's the evidence that there's a difference between 10 and 11 that causes the fit to be right? I can't say there's a difference between 11 and 10, or at least there's not evidence looking at that precisely. I can say this, that 10-round magazines have been the standard since the assault weapons ban was passed by the Federal Government in 1994. They're readily available. And I can say this, just 62 mass killings, the majority of those used large-capacity magazines. In Sandy Hook, for example, 30-round magazines were used. In the Aurora, California – sorry, Aurora, Colorado, theater shooting, where 58 people were injured, the killer could do that because he had a 100-round magazine and never had to reload. So, Your Honor, the difference between 11 and 10 may be very minor, but the point is 10 rounds are readily available. It is – forgive this quarrel about semantics – it's a standard-capacity magazine. It has been for years. Yes, throughout the country there are larger magazines now for sale. But in California, where Sunnyvale, of course, is, Californias have been limited to less-than-large-capacity magazines since the year 2000, as I've said. Now, Your Honor, talking about case law, I mentioned Jackson. We also detailed this in our briefs, that every case that has considered a large-capacity magazine sales ban or possession ban or some combination has upheld the ban against a Second Amendment challenge. There are now seven cases. Since we wrote our briefs, Colorado Outfitters in Colorado, Colby v. O'Malley and Friedman v. Howland Park are both cases we brought to the attention of the Court. Seven cases have considered this. Seven cases have upheld it with intermediate scrutiny. Now, with respect to 28 J.D.s, excuse me? You have 28 J.D.s, additional citations? Yes. The last two I did, and then the Colorado Outfitters case we did, and that was a trial and happened a few weeks before our brief was filed. But that's at 2014 Westlaw 3058518. You know our routine about filling out a chip at the end of your argument, the clerk will give you one, you fill out, give one copy to your opponent? I will, Your Honor. Thank you. So they have a chance to respond if they want. Okay. I'll do that. Thank you. Thank you. Now, we've heard about Heller and, of course, McDonald, and those are the Supreme Court cases in this area. But what's important to realize is they don't say no regulation is permissible. As a matter of fact, Heller says a variety of tools are still available to local governments like Sunnyvale. In particular, the Supreme Court said in Heller and then repeated in McDonald that the Second Amendment does not protect, quote, a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. That's all the citizens of Sunnyvale have done here is they're restricting a very specific type of accessory that makes weapons more dangerous and more lethal. We've talked about the fit. And here, the fit to the purpose of the city of Sunnyvale is very snug indeed because, as I've said, the state of California regulates large capacity magazines extensively. And by the way, has found large capacity magazines to be a nuisance as a matter of state law. All the citizens of Sunnyvale did in the wake of the tragedy in Newtown, Connecticut, the Sandy Hook School, they looked to see what could they do to plug that little narrow loophole that allows for possession for people who had already possessed these large capacity magazines. They plugged that loophole. The fit is exactly what was left out by state law. They tried to make their community a little safer by restricting possession of these lethal, more lethal, large capacity magazines. And unless your honors have any further questions, I'll submit it on that. It appears not. Rebuttal. I see Mr. Thompson's assistant filling up the sheet on the Colorado case. In case you're not familiar with it, you probably are. Very good. Thank you. I appreciate that. Just a couple of points. The city wants to portray this as an incremental minor step here. But there's really nothing incremental about a law that actually compels individuals to turn something into the government for confiscation and destruction. That's not some little step of closing a gap. It's the difference between a regulation and a flat prohibition. Now, the city also notes that Heller says that there are allowed to be restrictions and regulations on handguns. We are not suggesting otherwise. All we are suggesting is that Heller doesn't say that the only possible thing that is unconstitutional is what was going on in Heller. Heller sets forth principles for courts to apply in examining whether regulations and restrictions relating to firearms are compatible with the Second Amendment. And one of those principles is that if something is within the scope of the amendment, and in particular, as Heller deals with it, if a type of arm is within the scope of the Second Amendment, then it cannot be flatly prohibited. Now, and finally, you know, the city really doesn't have any better answer than the district court did here on the tailoring piece of the analysis. The city says this achieves its purpose and that it's a substantial fit, because at the end of the day, people in Sunnyvale won't have these magazines as a result of this law. Well, of course that's true, but that's really beside the point, because the question isn't whether this will achieve the city's purpose of prohibiting people from having these magazines. It's whether prohibiting people from having these magazines is a sufficiently tailored means of achieving the actual policy interest the city has set forth, which is to keep them from being used by people who would use them for unlawful purposes. With all due respect, that's certainly a very strong interest that the city has here, but the city can't seek to achieve it by dispossessing individuals who would use these instruments only for the lawful purpose of self-defense. Counsel, does it matter to your argument that there are several exceptions to the ordinance? I don't think it does, because those exceptions aren't meaningfully different than the exceptions that were at issue in the restriction the Court considered at Peruta. There are exceptions in Peruta. There are exceptions that don't apply to the average law-abiding citizen. They only apply to a small number of people. And as the Court said in Peruta, the fact that some people under some circumstances are allowed to exercise their Second Amendment rights doesn't excuse the city's attempt to prohibit other people who are perfectly law-abiding people from exercising their Second Amendment rights. To me, the big difference in Peruta was the fact that the threat of danger to one's self did not constitute an exception. I see that as really different and what set Peruta apart. Well, there's not any exception along those lines here. I mean, it's not as if people can possess these for self-defense purposes. That's the whole point of the law, is to say that you can't possess them even for self-defense purposes unless you're within the narrow categories of individuals that the city has decided it's willing to entrust these, entrust with possession of these constitutionally protected magazines. That was more akin to a weapons ban, a handgun ban, in Peruta as opposed to the magazine ban. Here it was the real core of Second Amendment protection, the actual weapon for self-defense itself. So it was closer to Heller in that respect. Well, again, I think that it's a mistake to think that Heller or Peruta are cases that say that something has to destroy the Second Amendment right entirely in order to be prohibited. If that were the test, then even Heller would have come out the other way, because the district did not prohibit the possession of long guns or other types of arms protected by the Second Amendment. And that's the question. But we have to look at how intense the burden is, and that's part of determining how much the Second Amendment has been burdened. But I think the right way to ask the burden question is with respect to the conduct that's being prohibited. If that conduct is within the scope of the amendment, and it is being categorically prohibited, as it is here, the possession of these magazines being categorically prohibited to the vast majority of law-abiding citizens in Sunnyvale, that is the most extreme burden imaginable. That's not a regulation. It doesn't leave open, as in Jackson, some alternative means of obtaining these magazines. It says, under no circumstances may anybody possess them. Ginsburg-McGillivray, Jr.: Well, it doesn't if there are exceptions. That is not categorical in the event there are exceptions. Again, the exceptions are really no different than the prudent exceptions. They apply to, say, law enforcement officers and retired law enforcement officers, people who operate armed cars. They don't – there's no exception that applies to the average law-abiding citizen who simply wants to possess these, as is his or her right, for self-defense purposes. Ginsburg-McGillivray, Jr.: How about the exception that talks about one with a license or permit issued by the California Department of Justice? Is that an exception that does not apply to the ordinary citizen? Yeah, that's not the kind of license or permit that an ordinary citizen is able to obtain. So, I mean, I don't take the city to dispute the whole point of this, is they don't want any exceptions that allow these to be in the hands of any of their residents unless they're talking about someone like a law enforcement officer. I mean, that's the basic goal of this, is to remove them from circulation among law-abiding individuals who want them for self-defense purposes. Any other questions? Thank you, counsel. Thank you. Thank you to both counsel. This case just argued is submitted for decision by the Court, and we are in recess until 9.30 a.m. tomorrow morning.
judges: Lynn, Hawkins, Rawlinson